**LLOYD RENNIE, et al., Plaintiffs**
**v.**
**HESS OIL VIRGIN ISLANDS CORP. and AMERADA HESS CORP. Defendants**

Civ. No. 94-82
**BERNARD GRIFFITH, WILBERFORCE CHARLES, et al., Plaintiffs**
**v.**
**HESS OIL VIRGIN ISLANDS CORP. and AMERADA HESS CORP., Defendants**

Civ. No. 95-104M

District Court of the Virgin Islands

Div. of St. Croix

September 18, 1997

Lee J. Rohn, Esq., *for Plaintiffs*

Beth Moss, Esq., *for Defendants*

RESNICK, *Judge*

■

## ORDER GRANTING DEFENDANTS' MOTION TO DISQUALIFY LISA MOORHEAD, ESQ. AND DENYING THE MOTION TO DISQUALIFY THE LAW OFFICES OF ROHN & CUSICK

THIS MATTER is before the Court on a motion filed by defendants Hess Oil Virgin Islands Corp. ["HOVIC"] and Amerada Hess Corporation ["AHC"] seeking the disqualification of Attorney Lisa Moorhead ["Moorhead] and the Law Offices of Rohn & Cusick ["Rohn & Cusick"] in the above-captioned matters.[1] Plaintiffs Rennie *et al.* and Griffith *et al.*, represented by Rohn & Cusick, filed an opposition. The plaintiffs in Civ. Nos. 1994-81 and 1995-66, also filed an opposition [Dema plaintiffs]. Defendants HOVIC and AHC moved to strike the opposition filed by the Dema plaintiffs and that motion was granted. Defendants then filed a Reply.

A hearing on this motion was held on Tuesday, August 19, 1997. At that hearing defense counsel stated that she was unaware that the hearing was evidentiary in nature, that she was not prepared, and sought a continuance. Over plaintiff counsel's objections, the Court entered an Order continuing the hearing to September 8, 1997. The Order also provided that by September 4, 1997, defendants would indicate whether they wished to proceed with the hearing or opt to rest on their pleadings and the record.

The defendants have indicated that they no longer wish a hearing and seek to rely solely on the record and moving papers. Thus, this matter is ripe for adjudication.

### Relevant Facts

The *Rennie* complaint was filed in July 1994, and the *Griffith* complaint in August 1995, in the aftermath of layoffs of workers at the Hess Oil Refinery in St. Croix, Virgin Islands. In their complaints, the plaintiffs claim that they were terminated from their employment, because they were black West Indians, and replaced by white, stateside employees. They claimed discrimination based

---

[1] Civil Nos. 1994-81 and 1995-86 (*Charles, Lane & Sylvester v. HOVIC & AHC*) and Civ. No. 94-104 (*Elmour v. HOVIC & AHC*) were consolidated with the *Rennie* cases, for purpose of discovery. Those plaintiffs are not represented by Rohn & Cusick or Lisa Moorhead and are not implicated herein.

on race, age, and national origin. They also claimed disruption of their pension benefits. The claims were predicated on the Civil Rights statutes and ERISA.

Attorney Moorhead was appointed Commissioner of the Department of Labor on February 1, 1995. She was hired by Rohn & Cusick on September 9, 1996. Moorhead left the Department of Labor in February of 1997. The defendants claim that Attorney Moorhead and the Law Offices of Rohn & Cusick should be disqualified from these cases based on Moorhead's simultaneous employment as the Virgin Islands Commissioner of Labor and private attorney with Rohn & Cusick, and her subsequent full time employment with Rohn & Cusick.

Defendants' motion asserts two major arguments. First they argue that Moorhead's role as head of the Department charged with investigating allegations of discrimination in employment, conflicted with her simultaneous and subsequent role as a private attorney in the firm which represents plaintiffs in employment discrimination cases, and violates the ABA MODEL RULES OF PROFESSIONAL CONDUCT. In support of their argument defendants claim that Moorhead has actually participated in hearings, meetings and depositions in substantially related cases, and that confidential information reportedly gathered at those hearings "jeopardized the confidentiality" of these cases and presents an "overwhelming appearance of impropriety". Second, defendants argue that by virtue of Moorhead's violations, the Law Offices of Rohn & Cusick should be disqualified from this matter as well.

## Discussion

■ The ethical considerations of attorneys who leave government service, and are hired by private firms, embrace not only protection of the interests of their clients, but also the interests of society and the integrity of government. Cody, Michael W.J., *Special Ethical Duties for Attorneys Who Hold Public Positions*, 23 Mem. St. U.L. Rev. 453 (1993). These attorneys are governed by standards which convey the importance of ensuring that the government functions efficiently and attracts the most capable individuals to assist in that pursuit. *Id*. Courts are sensitive to the fact that a bright line rule screening all government attorneys from subsequent

private practice will adversely affect the government's ability to attract qualified attorneys; on the other hand there is the danger of government attorneys conducting their offices with an eye toward future private employment. Lampert, A.M., *Disqualification of Counsel: Adverse Interests and Revolving Doors*, 81 Colum. L. Rev. 199 (1981). These considerations must be balanced against the use of disqualification motions as a litigation tactic, and a client's right to counsel of his choosing. *Powell v. Alabama*, 287 U.S. 45, 53, 77 L. Ed. 158, 53 S. Ct. 55 (1932).

The MODEL CODE OF PROFESSIONAL RESPONSIBILITY addresses these concerns in RULE No. 1.11(a)[Successive Government and Private Employment], and RULE 1.12 [Former Judge or Arbitrator]. The rules provide that an attorney shall not represent a private client in connection with a matter in which the attorney or judge participated "personally and substantially" as a public employee or officer. The predecessor to the Rules authorized disqualification if the attorney had "substantial responsibility" over the matter in dispute. ABA MODEL CODE DISCIPLINARY RULE DR 9-101.

In the present motion, defendants assert that, while serving as Commissioner of the Department of Labor (from February 1, 1995), Moorhead was hired by Rohn & Cusick on September 9, 1996. They allege that on October 9, 1996, Moorhead attended a meeting in which the hiring practices of a HOVIC subcontractor were discussed,[2] , and that Moorhead also assumed the role of material witness before the Virgin Islands Legislature in early 1997, with regard to the same subcontractor. Both proceedings, they claim, "involved the alleged discriminatory hiring practices . . . which form a substantial foundation for the plaintiffs' discrimination theory in the present matter." Moreover, Mr. Bernadin Bailey, a Department of Labor employee, was allegedly seen in possession of documents and discovery materials obtained from these cases, implying that they were obtained by Moorhead from Rohn & Cusick files. Defendants' most strenuous argument, however, is the overwhelming appearance of impropriety presented by the present situation.

---

[2] In that case, the plaintiffs sued the sub-contractor and HOVIC, alleging employment discrimination. D.Ct. Civ. No. 94-171.

■ Generally, a determination of "personal and substantial" participation requires presentation of facts (generally through sworn testimony) establishing actual and personal involvement in the matter in question. *City of Philadelphia v. District Council 33*, 503 Pa. 498, 469 A.2d 1051(S. Ct. Pa. 1983). In *City of Philadelphia* an attorney who was a city director, was later hired by a private firm. He was disqualified from participating in the same matter that he participated in as a city employee. Despite the attorney's claims that he could not recall the details of his involvement, testimony at a hearing revealed that he had prepared notes prior to and during the meetings; and that, as the director, had "substantial responsibility" for negotiating the agreement. The Court found that, under the factual circumstances of the case, the attorney's substantial and personal participation required his disqualification. His law firm was also disqualified.

The Court in *Armco, Inc. v. United States*, 2 C.I.T. 45, 520 F. Supp. 1220 (U.S. Ct. of Int'l Trade, 1981) also found personal and substantial involvement, and disqualified an attorney who had previously worked for the United States International Trade Commission during a preliminary investigation, and who later became employed with a private firm representing parties in the same matter. The Court relied on ABA Disciplinary Rules Canon 9 which states the same prohibition against private employment subsequent to public employment, and requires an examination of whether the attorney had substantial responsibility in the matter. The Court found that as an adviser to the one of the commissioners, the attorney had substantial responsibility, i.e., access to confidential information, regarding the preliminary investigation of the same matter. Because of the degree of his involvement, both he and his firm were disqualified.

The Court notes that Moorhead had statutory responsibility including the authority to investigate complaints of employment discrimination and enforce laws protecting employees. V.I. Code Ann. tit. 3, § 356. However, in the context of the cases before us, her role appears to be in name only, with no actual participation therein. Defendants point to a letter dated August 22, 1995, from the Department of Labor which informed these same defendants that "pursuant to the powers vested in the Commissioner of Labor

to investigate, ascertain, gather data, depose witnesses, issue subpoenas, and enter and inspect places of employment, an officer [of the Department] will be contacting you to gather information relative to the charge filed against you or your business." However, the letter was issued by a department employee, and not signed by Moorhead.[3]

■ Additionally, defendants' allegation that documents from these cases appeared in the hands of Moorhead's employees ignores the possibility that the various documents were obtained from the case file as part of the public record. Defendants do not claim the documents were in any way non-public or privileged. Moreover, examination of Moorhead's testimony before the Virgin Islands Legislature, with regard to the HOVIC subcontractor, revealed no significant evidence of "inside information" relating to these cases. Defendants having decided to forego an evidentiary hearing, and choosing to rely only on presumptions and inferences, have failed to establish that Moorhead participated "personally and substantially" in these cases.[4]

■ This does not end the inquiry in these cases, however, because the mere suggestion of misconduct alleged here may seriously undermine the public confidence in the integrity of this government and the legal profession. This Court notes that often, actual impropriety may be present but not susceptible to proof even after diligent scrutiny. With regard to government attorneys, a significant concern is the appearance of impropriety in the performance of their duties. *See In the Matter of Inquiry of the Advisory Committee on Professional Ethics*, 616 A.2d 1290 (S.C.N.J. 1992)("The appearance of impropriety has special relevance for attorneys invested with the public trust, such as a government attorney . . . ." Thus, an attorney's dual roles as city police officer

---

[3] In Moorhead's affidavit (Exhibit 2 to Plaintiff's Opposition) she avers unequivocally that, as Commissioner of Labor, she had no direct contact with any of the plaintiffs in these cases and that she had no adjudications in any way related thereto.

[4] Defendants also sought to rely on this Court's decision in *McKenzie v. St. Croix Storage Co.*, 961 F. Supp. 857 (D.C.V.I. 1997). However, *McKenzie* differs in that the decision to disqualify the attorney and her law firm was based on the fact that the attorney had actually participated as mediator in the same case and, the Court's finding that "the very nature of mediation requires that confidences be exchanged." *Id.* at 861.

and private attorney would compromise his representation of clients suing the city); *City of Hoquiam v. Public Employment Relations Commission*, 29 Wash. App. 319, 628 P.2d 1314, 1319 (C.A.Wa. 1981)("We are concerned that a neutral observer might be 'compelled to conclude that there exists the appearance of an action taken in part because [of] an unfair advantage in obtaining access to the decision makers'")(Internal citations omitted). Depending on the circumstances, such an appearance may provide a basis for disqualification. *Armstrong v. McAlpin*, 625 F.2d 433, 445 (2d Cir. 1980).

■ This is such a case. As Commissioner, Moorhead was statutorily responsible for the enforcement of labor laws, and her department was invested with the power to investigate charges of employment discrimination. She was also authorized to mediate disputes between management and labor. Her association with a firm with numerous cases pending before the very same department, gives rise to the perception that her decisions as Commissioner were influenced by such association.[5] The Court, in Inquiry, suggested that there is an appearance of impropriety if an "informed and concerned private citizen could reasonably find" that it exists. 616 A.2d at 1291. Similarly, in *General Motors Corp. v. City of New York*, 501 F.2d 639 (2d Cir. 1974), disqualification was ordered in the absence of a finding of actual and substantial participation. Because of the attorney's supervisory authority over a similar case, the court stated that "where the overlap of issues is so plain, and the government employ so direct, the resulting appearance of impropriety must be avoided through disqualification." *Id.* at 652. Thus, in order to avoid further public skepticism of the integrity of the government, and to safeguard against the potential harm to the adversary process, Attorney Moorhead must be disqualified from participating in the within cases.

---

[5] Because of the nature of this motion, i.e., to disqualify Attorney Moorhead and the firm of Rohn & Cusick from participation in these cases, this Court does not address the applicability of the Virgin Islands Government's Conflict of Interest provisions in 3 V.I.C. §§ 1102 - 1103.

**Imputed Disqualification of The Law Offices of Rohn & Cusick**

■ This Court will now discuss whether Moorhead's disqualification will be imputed to the law firm of Rohn & Cusick. Courts agree that there is no per se rule of vicarious disqualification of the law firm with which the disqualified government lawyer might become associated. Booth, Chan De Witt, *The Revolving Door Issue*, 31 How. L.J. 289 (1988)(and cases cited therein). The rationale underlying this view is twofold: the need for mobility of lawyers, and protection of a client's right to free choice of counsel. *Delaware River Port Authority v. The Home Ins. Co.*, 1994 U.S. Dist. Lexis 11427 *19. As a result, courts have considered ways of ameliorating the enforcement of imputed disqualification. *Armstrong v. McAlpin*, 625 F.2d 433 (2d Cir. 1980).

The MODEL RULES specifically provide for screening as an exception to vicarious disqualification. In Formal Opinion 342, the ABA ruled that the blanket rule of imputed disqualification with regard to a government attorney entering private practice may be obviated by effective screening mechanisms or "Chinese Walls." This institutional mechanism is designed to prevent the inadvertent disclosure of client confidences, and decreases the possibility that an attorney will disclose confidential information once he leaves his government position and enters a private firm. *Kesselhaut v. United States*, 214 Ct. Cl. 124, 555 F.2d 791 (Ct. Cl. 1977).

The cases suggest (1) isolating the disqualified attorney from any participation in the matter or any related matter; (2) severing any contact between the disqualified attorney and other firm attorneys concerning the matter; (3) denying the disqualified attorney access to documents and files related to the matter; (4) advising all staff of the attorney's disqualification and of the screening methods; (5) monitoring the attorney's correspondence to ensure that she does not receive any documents related to the matter; (6) ensuring that the attorney does not share in fees derived from representation in the action; and (7) submission of affidavits by the attorney and every one in the firm swearing to the facts under oath. 1994 U.S. Dist. Lexis *20. Such mechanisms must be put in place immediately, to avoid tainting the litigation. *Id.*

■ In the present case, this Court concludes that the disqualification of Attorney Moorhead should not be imputed to the law firm of Rohn & Cusick. The firm has consistently maintained that

Moorhead had no involvement in the actual handling of these cases. Unlike the attorneys in cases cited above, there was no evidence of day to day involvement. In an affidavit denying her involvement, Moorhead avers that she was not personally involved in the cases and that, in any case, she has been screened from the files. Maurice Cusick, a firm partner, has also made sworn statements attesting to Moorhead's isolation from the case. At this juncture, and in the absence of any evidence to the contrary, this Court finds that the firm has taken protective measures to screen Moorhead from participation in these cases.

The Court also considers that disqualification of the law firm of Rohn & Cusick three years after commencement of the lawsuits, would have an immediate, adverse effect on the clients and would unnecessarily delay the proceedings. An enormous amount of discovery and motion practice has been completed to date, and removal of the attorneys would create hardship to the unwitting clients.[6]

**Conclusion**

Despite misgivings about the conduct of the attorneys involved herein, the Court finds that the defendants have not established the type of "personal and substantial" participation which would form the basis for automatic disqualification of Attorney Moorhead. However, the Court does find that the appearance of impropriety presented by Moorhead's conduct herein is detrimental to the public's perception of the functioning of the government and the legal profession. Therefore, disqualification of Lisa Moorhead on that basis is necessary.

Because the defendants have not established actual participation by Moorhead in the subject cases, the Court concludes that the Law Offices of Rohn & Cusick need not be disqualified, but screening measures must be vigorously maintained.

Accordingly, it is hereby ORDERED AS FOLLOWS:

1. The Defendants' motion for the disqualification of Lisa Moorhead is GRANTED;

---

[6]Notwithstanding such consideration, had there been any cognizable evidence of direct involvement in the cases by Moorhead, either as Commissioner or attorney, the court would rule otherwise.

2. The Defendants' motion for the disqualification of the Law Offices of Rohn & Cusick is DENIED;

3. The Law Offices of Rohn & Cusick must continue to screen Lisa Moorhead from these cases. Such screening must include the following features:

   (A) Moorhead must be isolated from any participation in these matters or any related matter;

   (B) Moorhead must be screened from any contact with other firm attorneys concerning these matters;

   (C) Moorhead must be denied access to documents and files related to these matters;

   (D) All staff must be advised of the Moorhead's disqualification and of the screening methods;

   (E) Moorhead's correspondence must be monitored to ensure that she does not receive any documents related to these matters;

   (F) Moorhead must not share in any fees derived from representation in the actions; and

   (G) All attorneys and employees, must submit affidavits swearing to the implementation of the screening methods, under oath.

DATED: Sept 18, 1997