**EUNICE LAMB, Plaintiff**

**v.**

**PRALEX CORPORATION, ZENITH GOLDLINE PHARMACEUTICALS**
**and IVAX CORPORATION d/b/a IVAX BIOSCIENCES, Defendants**

LAMB v. PRALEX CORPORATION

Civ. No. 2000/145

District Court of the Virgin Islands

Division of St. Croix

July 12, 2004

LEE J. ROHN, NATALIE NELSON TANG-HOW, *for Lamb, Eunice, Plaintiff*, St. Croix, V.I.

KEVIN A. RAMES, *for Pralex Corporation, Zenith Goldline Pharmaceuticals, IVAX Corporation DBA IVX, Defendants*, St. Croix, V.I.

CANNON, *U.S. Magistrate Judge*

## ORDER REGARDING DEFENDANTS' MOTION TO DISQUALIFY PLAINTIFF'S COUNSEL

(July 12, 2004)

THIS MATTER came for consideration on defendants' motion to disqualify counsel. Plaintiff filed an opposition to the motion, and defendants filed a reply.

## RELEVANT FACTS

The plaintiff in this case is represented by Lee J. Rohn ["Rohn"] of the Law Offices of Lee J. Rohn. Defendants are represented by Kevin Rames, Esq. ["Rames"] of the Law Offices of Kevin Rames. This motion revolves around Eliza Combie ["Combie"] who worked as a paralegal at the Rames law office from October 30, 2000 to March 26, 2004. Her work at Rames' office involved working with several litigation matters, including this case.

On March 26, 2004, Combie began work with the Rohn law firm. Combie, Rohn and K. Glenda Camero, Esq. ["Cameron"], an associate at the firm, assert that they discussed the possible conflicts raised by Combie's possible employment. They also aver that at the initial interview, Combie acknowledged that there were cases in which she was conflicted at which time she was informed that, should she accept employment with the Rohn firm, she would be barred from contact with those cases.

Rohn and Cameron also state that on Combie's first day of work with Rohn, she submitted the list of cases. The list was circulated to all employees and a memo informing employees to refrain from discussing those cases in her presence was circulated and posted in common areas of the office. Combie, Rohn and Cameron all aver that no-one in the office has discussed any of the relevant matters with Combie. They also state that Combie is locked out of the electronic files and does not work in close proximity to them or to Rohn.

Rames invokes ABA Rules of Professional Conduct 5.3, 1.9, 1.16, and 1.10[1] to argue that Rohn and her entire law firm must be disqualified because during Combie's previous employment with Rames she obtained confidential information regarding pending matters which she may divulge to Rohn. Rohn denies any impropriety and assures the court that no confidences have been disclosed, and that a "scrupulous" screening procedure has been implemented to shield Combie from contact with the conflicted cases. Rames argues that such "self-serving" statements and are insufficient to stave off disqualification.

---

[1]  5.3 (Responsibilities Regarding Non-Lawyer Assistants); 1.9 (Duties to Former Clients); 1.16 (Declining or Terminating Representation); 1.10 (Imputation of Conflicts of Interest).

## DISCUSSION

A motion to disqualify counsel requires the court to balance the right of a party to retain counsel of his choice and the substantial hardship which might result from disqualification as against the public perception of and the public trust in the judicial system. *Powell v. Alabama*, 287 U.S. 45, 53, 77 L. Ed. 158, 53 S. Ct. 55 (1932). The underlying principle in considering motions to disqualify counsel is safeguarding the integrity of the court proceedings; the purpose of granting such motions is to eliminate the threat that the litigation will be tainted. *United States Football League v. National Football League*, 605 F. Supp. 1448, 1464 (S.D.N.Y. 1985). The district court's power to disqualify an attorney derives from its inherent authority to supervise the professional conduct of attorneys appearing before it. *Richardson v. Hamilton Int'l Corp.*, 469 F.2d 1382, 1385-86 (3d Cir. 1972), *cert. denied* 411 U.S. 986, 36 L. Ed. 2d 964, 93 S. Ct. 2271.

Disqualification issues must be decided on a case by case basis and the party seeking disqualification of opposing counsel bears the burden of clearly showing that the continued representation would be impermissible. *Cohen v. Oasin*, 844 F. Supp. 1065, 1067 (E.D. Pa. 1994) *citing Commercial Credit Bus. Loans, Inc. v. Martin*, 590 F. Supp. 328, 335-36 (E.D. Pa. 1984). Courts are required to "preserve a balance, delicate though it may be, between an individual's right to his own freely chosen counsel and the need to maintain the highest ethical standards of professional responsibility." *McCarthy v. SEPTA*, 2001 PA Super 106, 772 A.2d 987 (2001). This balance is essential if the public's trust in the integrity of the Bar is to be preserved. *Id.* The Court was unable to find a Third Circuit decision on this precise issue. However, several courts have addressed it.

ABA Rule 5.3 addresses the responsibilities of attorneys who employ non-lawyer assistants. It encompasses the protection of client confidences communicated to a non-lawyer assistant, such as a paralegal or secretary. *Daines v. Alcatel, S.A.*, 194 F.R.D. 678, 681 (E.D. Wash. 2000). The rule imposes a duty on the supervising attorney to ensure that the non-lawyer adheres to professional obligations. Thus, a trial court has the authority, in a litigation context, to disqualify counsel based on the conduct of a nonlawyer assistant that is incompatible with the lawyer's ethical obligations. *Smart Industries Corp. Mfg. v. Superior Court in and for County of Yuma*, 179 Ariz. 141, 876 P.2d 1176, 1181 (1994).

216

Moreover, such disqualification may be imputed to the entire law firm. *Leibowitz v. The Eighth Judicial District Court of the State of Nevada*, 78 P.3d 515, 523 (Sup. Ct. Nev. 2003).

██ The issue is whether plaintiff's counsel should be disqualified because a paralegal formerly employed by defendants' attorney and who was involved in litigation concerning defendants is now employed by plaintiff's counsel. The Standing Committee on Ethics and Professional Responsibility, pursuant to the ABA Model Rules of Professional Conduct, hold that a law firm that hires a paralegal formerly employed by another law firm may continue to represent clients whose interests conflict with the interests of clients of the former employer on whose matters the paralegal has worked, so long as the employing firm screens the paralegal, and as long as no information relating to said clients is revealed to the employing firm. *Informal Opinion 88-1526 BNA Lawyers' Manual on Professional Conduct* 901:318 (June 22, 1988). The Committee reasoned as follows:

> it is important that nonlawyer employees have as much mobility in employment opportunity consistent with the protection of clients' interests. To so limit employment opportunities that some nonlawyers trained to work with law firms might be required to leave the careers for which they have been trained would disserve clients as well as the legal profession. Accordingly, any restrictions on the nonlawyer's employment should be held to the minimum necessary to protect confidentiality of client information.

*Id. See also, In re Complex Asbestos Litigation*, 232 Cal. App. 3d 572, 586, 283 Cal. Rptr. 732 (1991).

A Court faced with such a motion must first determine whether confidential information has been divulged. Rames claims that Combie, participated in all of the cases in which his firm was litigation counsel; that he "shared with Combie litigation strategies and tactics"; and that Combie was "privy to the firm's entire case load as she worked on the vast majority of cases that were and are pending in the Rames law office." Rames maintains that Combie's possession of confidential client information gives Rohn an unfair advantage, and violates the notions of fairness and integrity in the judicial process, requiring disqualification of Rohn and her entire law firm. Combie's affidavit, annexed to Rohn's opposition, counters that Combie "never participated in any discussions

or meetings with Attorney Rames", and was never privy to any strategy and tactical deliberation with regard to any opposing counsel. Combie avers that her duties revolved around filing of pleadings and correspondence and that information was transmitted to her on an "as needed" basis. Rames dismisses these statements as self-serving and untrue.

The Court finds that Combie was exposed to confidential information at the Rames law firm. It is reasonable for paralegals to handle confidential client information in order for the law firm employer to render efficient and cost-effective service. Combie is described as an experienced and competent worker. Therefore, it is conceivable that based on her skills, she was given substantial responsibility with the cases, including this case. By virtue of her working on the cases, it is also conceivable that she and Rames shared confidential information regarding them.

However, the fact that Combie has acquired confidential information in a former job is not sufficient by itself to require disqualification of her new employer. *Rivera v. Chicago Pneumatic Tool Co.*, 1991 Conn. Super. LEXIS 1832 (1991); *Leibowitz*, 78 P.3d at 523; *In re Complex Asbestos Litigation*, 232 Cal. App. 3d 572, 592 (1991). Imputed disqualification is considered a hard remedy that "should be invoked if, and only if, the court is satisfied that the real harm is likely to result from failing to invoke it." *Leibowitz*, 78 P.3d at 521, *citing Hayes v. Central States Orthopedic*, 2002 Okla. 30, 51 P.3d 562, 565 (2002).

The hiring of a non-lawyer who possesses confidential information of an adversary puts such confidential information at risk. As a result, a rebuttable presumption arises that the information will be disclosed to the new employer. *Zimmerman v. Mahaska Bottling Co.*, 270 Kan. 810, 19 P.3d 784 (2001); *Leibowitz*, 78 P.3d at 521; *Kapco Mfg. v. C & O Enterprises, Inc.*, 637 F. Supp. 1231, 1237 (N.D. Ill. 1985). The presumption serves to strike a balance between protecting confidentiality and the right to counsel of one's choice. *Leibowitz*, at 522. A party is able to rebut the presumption that confidential client information has been used or disclosed, by presenting evidence of effective screening mechanisms to shield the employee from the cases. *Rivera*, 1991 Conn. Super. LEXIS 1832; *Daines*, 194 F.R.D. at 682. In other words, the challenged attorney has the burden of showing that the practical effect of formal screening has been achieved and that the employee has not had and will not have any involvement with the

218

litigation or any communication concerning the litigation. *In re Complex Asbestos Litigation*, 232 Cal. App. 3d at 597. In this jurisdiction, the erection of a "Chinese Wall"[2] is recognized in this regard. *David v. Bank of Nova Scotia*, Terr. Ct. Civ. No. 37/2000 (Order dated December 19, 2001); *Island Management Group, Inc. v. The Bank of Nova Scotia*, Dist. Ct. Civ. No. 1999/104 (Order dated November 17, 2000); *Rennie v. Hess Oil Virgin Islands Corp.*, 981 F. Supp. 374, 378, 37 V.I. 323 (1997).

Rohn states, and Combie and Cameron aver, that during her interview the parties discussed the fact that she was previously employed with Rames who is an adversary of Rohn and is opposing counsel in this case. They further state that upon Combie's disclosure of the conflicted cases, "they advised her that were an offer of employment extended, she would be prohibited from and have no access to the electronic or physical files for those cases on which she would be conflicted." A list of the cases was circulated to all employees and posted in common areas; Combie has not been near the files and does not know their location; the employees have been instructed not to discuss the cases in her presence; and she has been locked out of the electronic filing system with regard to those cases.

The evidence of screening provided by Rohn was not directly contradicted by Rames. Although the Court understands his chagrin, more is required before a court will be forced to relieve a litigant of his counsel of choice. A majority of courts have endorsed screening procedures similar to the ones implemented in this case, under similar circumstances. Additionally, Rohn's office employs several individuals and there is little likelihood that Combie will be <u>required</u> to work on the conflicted cases. The Court is satisfied that the procedures employed by Rohn's office to shield Combie from the files, supports a finding that any information obtained at the Rames law firm will not be disclosed.

## CONCLUSION

In light of the foregoing, disqualification is not warranted. In addressing ethical problems created by non-lawyers changing employment from a law firm representing one party to a law firm representing an adverse party, courts must fashion rules which strike a balance

---

[2] A "Chinese Wall" is a screening mechanism to protect a former client's confidences so that the current client may be represented by lawyers of its own choosing.

between the public policy of protecting the confidentiality of attorney-client communications and a party's right to representation by chosen counsel. *See, Kmart v. Saldana,* 260 F.3d 228, 43 V.I. 361 (3d Cir. 2001); *Leonard v. Univ. of Del.,* 1997 U.S. Dist. LEXIS 4196 (D. Del. 1997). Accordingly, any restrictions on the non-lawyers employment should be held to the minimum necessary to protect confidentiality of client information.

A prophylatic rule which requires the employing firm to establish procedures which ensure that confidential information has not and will not be disclosed to the employing firm safeguards the competing interests. The Court finds that plaintiff's counsel has rebutted the presumption of improper disclosure by presenting evidence of the "Chinese Wall" implemented in that regard. Accordingly, disqualification is not warranted and the defendants' motion will be denied at this time.

Now therefore it is hereby

ORDERED that the defendants' motion to disqualify plaintiffs' counsel is DENIED WITHOUT PREJUDICE. Defendants may refile their motion if there is credible evidence that confidential client information has been disclosed.